

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AARON BONDAROFF,

'07 CIV 7952

                 Plaintiff,

Civil Action No.

   -against-

ANYTHING CORP., and KIERNAN COSTELLO,
Individually,

                 Defendants.
-------------------------------------------------------------------X

Plaintiff, AARON BONDAROFF (also referred to alternatively the "Bondaroff"), by his

attorneys, Gersten Savage LLP, for his Complaint against the Defendants, ANYTHING CORP.

("AC") and KIERNAN COSTELLO ("Costello" and jointly with AC, the "Defendants"), hereby

alleges and states as follows:

## PRELIMINARY STATEMENT OF THE CASE

1.  This is an action for false designation and unfair competition under the Lanham Act (*15*

*U.S.C §1125(a)*), common law trademark infringement, common law unfair competition, injury

to business reputation and dilution, violation of the New York trade-name deception law

(*General Business Law §133),* violation of the New York anti-dilution statute (*General Business*

*Law §360-1)*, violation of the New York right of privacy and publicity laws (*N.Y. Civ. Rights*

*Law §§ 50 and 51)*, violation of the right of privacy and publicity laws in each state into which

goods have been sold by the Defendants, conversion and unlawful appropriation of a trade-name,

which trade-name the Defendants have falsely and fraudulently claimed as there own.

1

## INTRODUCTION

2.  Bondaroff is a trend-setter who created an "underground" lifestyle coupled with knowledge of what appeals to those who are similarly seeking to live in and be a part of that "underground" lifestyle and the concomitant "cool" attitude which goes with it.  Bondaroff is also known as "A-Ron".  In 2002, he wrote for the magazine Mass Appeal under the name "A-Ron" and coined the trademark **"aNYthing"**™.  A copy of the article is attached hereto as Exhibit A.

3.  Since as early as December 2001, Bondaroff originated and developed the trademark and brand **"aNYthing"**™ which he has used to distinguish his goods and services and has become associated with him exclusively.  The mark was employed on shirts which were sold both domestically and internationally and came to be recognized and associated with Bondaroff as the source of the shirts.  A copy of an article in Dazed from July 2002 identifying Bondaroff with the "skate and graffiti inspired clothing line" is attached hereto as Exhibit B.

4.  In or about April 2004, Bondaroff was approached by Defendant Costello who sought to capitalize on Bondaroff's reputation and following.  Defendant Costello represented that he had access to capital from his family and would establish a company in which Bondaroff would own fifty (50%) percent of the shares in exchange for Bondaroff providing his creative, sales and marketing in conjunction with Bondaroff's trademark **"aNYthing"**™ for use on clothing and related items.  Defendant Costello was to provide the management expertise and run the company.

5.  From in or about mid-2004 up to and through the present date, Defendant Costello failed to properly run the company, failed and refused to give Bondaroff the promised shares, failed and refused to maintain proper books of account and surreptitiously sought to steal the trademark

**"aNYthing"**™ by, among other things, attempting to obtain a Federal trademark registration in the name of Defendant AC and filing a d/b/a for "A New York Thing" in the name of Defendant AC. Defendants continue to violate Bondaroff's rights.

6. Despite repeated demands, the Defendants have failed and refuse to cease and desist in their tortuous actions, continue to represent themselves and their goods and services as emanating from Bondaroff, continue to violate his right of privacy and publicity, and continue to cause confusion among customers as to the source of origin of the goods.

7. Bondaroff seeks to enjoin this activity and damages.

## JURISDICTION AND VENUE

8. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §1338 in that this is a claim for trademark infringement under the Lanham Act and the other claims set forth herein are for unfair competition under the statutes and common law of the State of New York and elsewhere.

9. This Court has personal jurisdiction over Defendant AC pursuant to the laws of the State of New York because it is a New York Corporation and maintains its principal place of business in New York at 51 Hester Street, New York, N.Y., within the Southern District of New York, and is therefore subject to the jurisdiction of a New York court of general jurisdiction within this District.

10. This Court has personal jurisdiction over Defendant Costello in that, upon information and belief, he resides and/or works in the Southern District of New York and the past and current acts of infringement and unfair competition were committed by him within the Southern District of New York.

11. Venue is proper within the Southern District of New York in that, upon information and belief, Defendants reside and are otherwise found within this District and a substantial part of the events, actions and omissions giving rise to the claims occurred within the Southern District of New York.

### THE PARTIES

12. Bondaroff is and was, at all times, an individual having his principal place of residence at 135 Henry Street, New York, New York.

13. Defendant Costello is an individual having his principal place of business at 51 Hester Street, New York, New York and, upon information and belief, residing in New York, New York.

14. Defendant AC is a corporation organized and existing under the laws of the State of New York and maintains it principal place of business at 51 Hester Street, New York, New York. Defendant AC was formed on April 21, 2004.  Upon information and belief, the sole shareholder of Defendant AC was and is Defendant Costello.

### STATEMENT OF THE OPERATIVE FACTS

15. From in or about 2000 to the present, Bondaroff has been promoting himself and his clothing line as part of an underground sub-culture of lower Manhattan.  Bondaroff has expended considerable time and effort over the past seven (7) years towards developing and branding the trade-name "**aNYthing**"™ as synonymous with a "cool" presence in counter-cultural activities and associating that trade-mark with his clothing and activities.

4

16. From as early as November 2001, Bondaroff designed, had manufactured and sold tee-shirts, hats, and other apparel which contained his logo and trademark prominently displayed on the items of apparel and identifying him as the originator and source of the goods. A copy of invoices for the apparel is attached hereto as Exhibit C.

17. From on or about November 2001 through May 2004, Bondaroff continued to promote his brand and trade-name **"aNYthing"**™ in conjunction with his apparel and "cool life-style" with which it was associated.

18. In or about April 2004, Defendant Costello, who had no prior involvement with apparel or the trade-mark, approached Bondaroff with a proposal to become a shareholder in an entity to promote the trade-mark and apparel. Defendant Costello represented that he had access to capital from his family and would establish a company in which Bondaroff would own fifty (50%) percent of the shares in exchange for Bondaroff providing his creative, sales and marketing in conjunction with Bondaroff's trademark **"aNYthing"**™ for use on clothing and related items. Defendant Costello was to provide the management expertise and run the company.

19. At all times Defendant Costello acknowledged and confirmed that the trade-name **"aNYthing"**™ was owned exclusively by Bondaroff and that he would retain all rights, including licensing rights, to the trade-name. In reliance on Defendant Costello's representations and promises, Bondaroff permitted Defendant Costello to form a corporation using the trade-name **"aNYthing"**™ with the express understanding that Bondaroff would become a 50% owner of the corporation and that he would control, for all purposes, the use of the trade-name **"aNYthing"**™.

20. In or about April 21, 2004, Defendant Costello formed Defendant "aNYthing Corp" and employed the trade-name **"aNYthing"**™ as a part of the corporate name. From in or about May

2004 through September 2004, Bondaroff repeatedly requested that Defendant Costello provide the promised shares and additional documentation to memorialize their agreement.

21. In or about September 3, 2004, Defendant Costello presented Bondaroff with a draft of a shareholders' agreement ("Draft Agreement") which had been prepared by Defendant Costello's attorney. The Draft Agreement confirmed that the trade-mark "**aNYthing**"™ was owned exclusively by Bondaroff and provided, inter alia, that Bondaroff would enter into a license to permit Defendant AC to use the trade-name for apparel products and for publishing and marketing of music, plays and motion pictures, among other things. A copy of the Draft Agreement is attached hereto as Exhibit D.

22. The Draft Agreement was rejected by Bondaroff and no license was ever executed to permit Defendant AC to use the trade-name "**aNYthing**"™. At no time did Bondaroff ever transfer or otherwise grant any rights to Defendant Costello or Defendant AC to register, exploit or otherwise use his trade-name "**aNYthing**"™, other than in conjunction with apparel that Bondaroff created. Bondaroff continued to promote his trade-name and brand and permitted Defendant AC to sell his product line in and through its store facility at 51 Hester Street, New York, New York.

23. Unbeknownst to Bondaroff, in or about December 7, 2005, Defendant Costello filed a certificate of assumed name with the New York Secretary of State seeking to acquire on behalf of Defendant AC the name "A New York Thing". This assumed name was designed to and did deceive and mislead the public as to the identity of the Defendant AC and was solely assumed by Defendant AC to create a connection between it and Bondaroff's trade-name and brand, all without Bondaroff's consent. A copy of the certificate of assumed name is attached hereto as Exhibit E.

6

24. Unbeknownst to Bondaroff, and without Bondaroff's consent or license to do so, in or about January 18, 2007, Defendant Costello filed a Federal trademark application with the United States Patent and Trademark Office seeking to acquire on behalf of Defendant AC the trade-name "**aNYthing**"™.  In the application, Defendant AC, through its attorney, falsely and fraudulently declared, under the penalty of perjury, that it was the owner of the trade-name "**aNYthing**"™ and that it had the right to use that mark.  The declaration further falsely and fraudulently averred that to the best of the signatory's "…knowledge and belief, no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used or in connection with the goods/services of such person, to cause confusion, or to cause mistake, or to deceive".  A copy of the Defendants' trademark application is attached hereto as Exhibit F.

25. In truth and fact, Defendant Costello and Defendant AC knew that they had no ownership right to the trade-name and that all such rights belonged to Bondaroff.  Defendants Costello and AC sought to steal Bondaroff's trade-name and convert it to their own use to mislead the public as to the connection between them and Bondaroff and did so with the intent of deceiving the public as to their identity and association with Bondaroff.

26. Defendants Costello and AC maintain a web site for advertising and for purposes of trade and the sale of articles of clothing under the "**aNYthing**"™ trademark.  They have used Bondaroff's name and pictures for advertising purposes and for trade within the State of New York without his written consent, in violation of N.Y. Civ. Rights Law §§50 and 51.

27. Upon information and belief, Defendants Costello and AC have sold articles of clothing by and through the web site into other states and have used Bondaroff's name and pictures for

advertising and trade to sell into those other states, all in violation of each states' right of privacy and publicity laws.

28. From in or about mid-2004 up to and through the present date, Defendant Costello failed to properly run the company, failed and refused to give Bondaroff the promised shares, failed and refused to maintain proper books of account and surreptitiously sought to steal the trademark "**aNYthing**"™ by AC, all with the intent of deceiving and misleading the public and diluting and injuring Bondaroff in his business and business reputation.

## IN AND FOR A FIRST CAUSE OF ACTION

### (Violation of Lanham Act – Section 43(a))

29. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-28 as if set forth herein in full.

30. Bondaroff has created a distinctive trademark and has developed a favorable association between his trade-mark "**aNYthing**"™ and his public image such that there is a likelihood of confusion created by Defendants' use of the mark in conjunction with the goods being sold by Defendants both on the internet, which effects interstate commerce, and through the store at 51 Hester Street.

31. Defendants are currently using photographs of Bondaroff in their advertising and particularly on their website without his express authorization and without any written consent. Such advertising is false and is being used to deceive and create confusion in the minds of consumers. A copy of some of the photographs is attached hereto as Exhibit G.

32. The continued use of Bondaroff's trademark by Defendants constitutes a false designation of origin and a false description of the goods, all of which results in unfair competition by the Defendants and actual or potential deception of consumers.

33. The continued use of Bondaroff's trademark by Defendants constitutes a false representation that the products and activities of the Defendants have been expressly or impliedly authorized or approved by Bondaroff, all of which results in unfair competition by the Defendants and actual or potential deception and a likelihood of confusion of consumers.

34. The continued use of Bondaroff's photograph and likeness by Defendants constitutes a false representation that the products and activities of the Defendants have been expressly or impliedly authorized or approved by Bondaroff, all of which results in unfair competition by the Defendants and actual or potential deception and a likelihood of confusion of consumers.

35. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury.

36. Plaintiff Bondaroff seeks immediate injunctive relief restraining Defendants Costello and AC from continuing to use Bondaroff's trade-name and likeness and otherwise misleading and deceiving the public into believing that he is connected to the Defendants.

**IN AND FOR A SECOND CAUSE OF ACTION**

**(Violation of New York Business Law – Section 133)**

37. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-36 as if set forth herein in full.

38. N.Y.Gen. Bus. Law §133 provides, in applicable part, that:   "No person, firm or corporation shall, with the intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade,

or for any other purpose, any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation…"

39. Defendants Costello and AC have, with the intent of deceiving and misleading the public, adopted and used the trade name "**aNYthing**"™ and assumed the name "A New York Thing" for advertising purposes and for purposes of trade and other purposes so as to deceive and mislead the public as to their identity and as to their connection with Bondaroff, without any permission, consent or license from Bondaroff, and with the specific intent of stealing Bondaroff's trade-name.

40. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury.

41. Plaintiff Bondaroff seeks immediate injunctive relief restraining Defendants Costello and AC from continuing to use Bondaroff's trade-name and otherwise misleading and deceiving the public into believing that he is connected to the Defendants.

### IN AND FOR A THIRD CAUSE OF ACTION

### (Violation of N.Y. Gen Bus. Law §360-1 – Unfair Competition, Trademark Infringement and Dilution to Business Reputation)

42. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-41 as if set forth herein in full.

43. N.Y. CLS Gen. Bus. §360-1 provides that: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive

relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services".

44. Defendants Costello and AC have knowingly, willfully and without Bondaroff consent, adopted and used the trade name **"aNYthing"**™ and assumed the name "A New York Thing" for advertising purposes and for purposes of trade and other purposes. They have continued to use the trade name despite having been instructed by Bondaroff to cease and desist in its use.

45. The use by the Defendants of the trade name **"aNYthing"**™ and the assumed name "A New York Thing" is likely to confuse the public as to the source of origin of goods and services and to confuse the Defendants with Bondaroff.

46. Bondaroff's trade-name **"aNYthing"**™ has acquired a secondary meaning in that it has become so associated in the public's mind with Bondaroff that it identifies his persona and identifies goods and services sold and provided by him as distinguished from goods and services sold and provide by others.

47. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury to his business reputation and dilution of the distinctive nature and quality of his mark.

48. Plaintiff Bondaroff seeks immediate injunctive relief restraining Defendants Costello and AC from continuing to use Bondaroff's trade-name and otherwise misleading and deceiving the public into believing that he is connected to the Defendants.

## IN AND FOR A FOURTH CAUSE OF ACTION

### (Conversion and Unlawful Appropriation of a Trade-name)

49. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-48 as if set forth herein in full.

50. In or about December 7, 2005, Defendant Costello filed a certificate of assumed name with the New York Secretary of State seeking to acquire on behalf of Defendant AC the name "A New York Thing".   Bondaroff did not consent to the filing.  Upon information and belief, the reason that Defendant Costello filed the certificate was to unlawfully appropriate and convert to his and Defendant AC's own use the property, goodwill, reputation and trade-name of Bondaroff.

51. In or about January 18, 2007, Defendant Costello filed a Federal trademark application with the United States Patent and Trademark Office seeking to acquire on behalf of Defendant AC the trade-name **"aNYthing"™**.  Bondaroff did not consent to the filing nor did he license the Defendants to do so.

52. The declaration to the application falsely and fraudulently declared, under the penalty of perjury, that Defendant AC was the owner of the trade-name **"aNYthing"**™ and that it had the right to use that mark.  The declaration further falsely and fraudulently averred that to the best of the signatory's "…knowledge and belief, no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used or in connection with the goods/services of such person, to cause confusion, or to cause mistake, or to deceive".

12

53. In truth and fact, Defendant Costello and Defendant AC knew that they had no ownership right to the trade-name and that all such rights belonged to Bondaroff. Defendants Costello and AC sought to steal Bondaroff's trade-name and convert it to their own use to mislead the public as to the connection between them and Bondaroff and did so with the intent of deceiving the public as to their identity and association with Bondaroff.

54. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury.

55. Plaintiff Bondaroff seeks immediate injunctive relief requiring Defendants Costello and AC from continuing to apply for the Federal trademark registration and from otherwise falsely and fraudulently representing that Defendants are owners of the trade-name "aNYthing"™.

## IN AND FOR A FIFTH CAUSE OF ACTION

## (Violation of N.Y. Civ. Rights Law §§ 50 and 51 – Right of Privacy and Common Law Right of Publicity)

56. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-55 as if set forth herein in full.

57. Bondaroff has cultivated a valuable property interest in his public image from as early as 2000 and has continued to exploit his name and face.

58. Defendants have used various photographs and streaming video graphics of Bondaroff for commercial purposes in conjunction with Defendants' website and specifically in conjunction with the on-line store through which Defendants sell clothing in New York.

59. Bondaroff has never given his written consent for the Defendants to use the photographs or streaming graphics and has instructed them to cease and desist in such use.

60. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury.

61. Plaintiff Bondaroff seeks immediate injunctive relief restraining Defendants Costello and AC from continuing to use Bondaroff's photographs and streaming video graphics on their website and elsewhere and otherwise misleading and deceiving the public and damages for their use thereof, including exemplary damages.

## IN AND FOR A SIXTH CAUSE OF ACTION

### (Violation of Right of Privacy and Right of Publicity)

62. Bondaroff incorporates by reference each of the allegations of Paragraphs 1-61 as if set forth herein in full.

63. Bondaroff has cultivated a valuable property interest in his public image from as early as 2000 and has continued to exploit his name and face.

64. Defendants have used various photographs and streaming video graphics of Bondaroff for commercial purposes in conjunction with Defendants' website and specifically in conjunction with the on-line store through which Defendants sell clothing, upon information and belief, throughout the United States and abroad.

65. Bondaroff has never given his written consent for the Defendants to use the photographs or streaming graphics and has instructed them to cease and desist in such use.

66. Upon information and belief, Defendants have actually sold clothing and other items through the website store and have violated Bondaroff's right of privacy and right of publicity in each state into which such sales were made.

67. Upon information and belief, Defendants have actually sold clothing and other items in countries outside of the United States, through the website store and have violated Bondaroff's right of privacy and right of publicity in each country into which such sales were made.

68. As a direct and proximate result of the conduct set forth above, Plaintiff Bondaroff has suffered and will continue to suffer irreparable injury. Plaintiff has no adequate remedy at law.

69. Plaintiff Bondaroff seeks immediate injunctive relief restraining Defendants Costello and AC from continuing to use Bondaroff's photographs and streaming video graphics on their website and elsewhere and otherwise misleading and deceiving the public and damages for their use thereof, including such exemplary and punitive damages and attorneys fees as are permitted and awarded in each state and country.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

a)   Injunctive relief requiring Defendants to cease and desist in their use of the trademark "**aNYthing**"™ and any confusingly similar adaptation or likeness thereof;

b)   Injunctive relief requiring Defendants to cease and desist from any and all advertisements, statements, descriptions or other activities which seek to convey that Plaintiff is associated with, endorses or is affiliated with Defendants;

c)   Injunctive relief requiring Defendants to cease and desist from any and all activity which is likely to cause consumer confusion as to the source of any goods or services offered by Defendants;

d)   Assignment to Plaintiff of all rights to the assumed name "A New York Thing" and the corporate name "aNYthing" Corp.;

e)   Injunctive relief requiring Defendants to cease and desist from any and all activity to seek to register the mark "**aNYthing**"™;

f)   Injunctive relief requiring Defendants to cease and desist from using any photograph or other graphic image or likeness of Plaintiff in advertising or otherwise;

g)   Compensatory damages including unjust enrichment in an amount to be determined at trial;

h)    An award of reasonable attorneys' fees;

i)   All costs of the proceeding herein, along with pre and post judgment interest;

j)   Punitive and exemplary damages;

k)   Such other and further relief as the Court deems just and proper under the circumstances.

Date:   September 10, 2007

GERSTEN SAVAGE LLP
Attorneys for Plaintiffs

By _____
James D. Fornari (JF3433)
600 Lexington Avenue
New York, New York 10022
Tel:    (212) 752-9700
Fax:    (212) 980-5192

e-mail: jfornari@gerstensavage.com

Exhibit A





# tHE aNYtHiNg goES sHoW

*by A-ron the Rotten Don*

Finally It's here, the season of flossin, the sun is out and nights are cool If you party too hard, you wake up too late and miss the day, so stay on track because the streets are packed. They're filled with Explorers, Navigators, local tribes and, of course, the pirates are here too. As we prepare for another hot blazing summer, we still search for the hidden treasures of the city. For instance: new rooftops to throw craze on, hidden after-hours for late night sessions, fresh clean walls for playin' and, my favorite, the female treasures living day to day In the city with the sun, giving off a glisten no jewel can.

As the summer 2002 sneaks on in, the free-for all is about to begin The city has a new mayor named Bloomberg or should we now call him mayor "Boomberg" since he said he smoked the chronic and enjoyed it What a relief the mayor's loose and likes to relax Since we on the subject of the mayor, I also heard another rumor that he is going to re-legalize fireworks on the 4th of July. Now *that* would be a nice refreshment of old school New York. I said to myself, who would know more about this than my man Firecracker Joe Chan also known as the Chinatown Kid. 3 dollar Joe Clamz and Cosmo, the firecracker throwin freak from *Boogie Nights*. [Remember the drug robbery scene that went bad?]Is it true? Are they gonna re-legalize fireworks? Joey Chan started tripping and was still venting about the fact that they played an audio tape of firecracker explosions on the Chinese new year celebration in February; and that New York and the Chinese were ripped off of their culture. Moral of the story Is hopefully this summer we could have some bottle-rocket wars, m-8o blockbuster attacks, too hot to handle roman candle niggerchaser erasers. Much respect to Joe who directed a feature film called "Not A Day Goes By," about not looking at life in a one way path, when we living in a two way street.

Shout out to my man KANOone seen at a recent art show hookin' up a blackbook for his little man who be tagging NENEone. That's dope. seeing one generation passing the family tradition down to another.

Congratulations to the NATURAL BORN baby, TRUE

What's the deal with Verizon payphones being raised to 50cents on the low without even informing the people of the city? Shystee!! Big up to my boys Jeff Pang. Pete Bici (coming home soon) and Peter Huynh OG NYC skate gurus, check out their clothing line UXA Motion Group. See me chillin' at the next loft jam with my click RUB & TUG Some live it, some love it, some rub it, some tug it...

Anybody who's down, I'm throwing a party at The Tombs (Central Bookings) June 1st, so everybody commit a crime and meet me inside And yes there will be a crafts service on hand

What's up with all these DJ'S lately who be owning one crate of records getting the jobs? Doesn't people realize that's only more buckets of water being thrown on the New York City nightlife.

Tune in to the KIDS AMERICA show on MNN public access on Mondays, channel 35. 11:30

You nerds!! If you see me riding on the back of my homegirl Kisha's motorcycle in the streets, just raise up and stick yo middle fingers in the air, because we ain't stopping Hopefully the editor lets this one slide by again.











# the aNYthing goes show!

*by A-ron the Rotten Don*

OKOKOKOKOKOK!

The reality of it is this: the NJ Nets are first and the NY Knicks are last. Ya know what would be dope?—If the Nets could play at MSG and the Knicks would go play at the Ghettolands.

For all you thirsty-ass motherfucka's out there—I heard there's a water drought in NYC.

I was rollin' down Broadway the other day and bumped into my man Sleazy D. We were havin' a snap and he said to me, "Lately, New York feels like the year 1978 - hardcore cocaine and group sex." Damn I hope I'm not around when 1984 comes back - crack cocaine and broke sex.

Welcome home to my homies gettin' out of jail this month: Harry Jumunji, DEXA, Steven Cales, and my boy Harold Hunter, who just did three days in the hole in LA county because he don't gang-bang

The quote of the month is: "Teachers teach and do the world good. Kings just rule, and most are never understood." Fresh from '88, you suckers!!!

The CD of the year is a *Sarcastic CD* by DJ Harvey. This is a hardcore sessions CD. If you ain't scared to relapse and join the cult called the CLINIC, then search for this CD, get it, play it, and re-live the year 1978. Vehicle skateboards is taking over whether you like it or not!!!



Exhibit B



# DAZED

### & CONFUSED 91

## THE NEW NEW YORK

**TERRY RICHARDSON EL-P ASHANTI ALIFE LEO FITZPATRICK**
**ALAN VEGA INTERPOL CHARLOTTE AYANNA MOONEY SUZUKI**



text SAM FIVORY  photography RYAN McGINLEY

ARON

# GIFT OF GA[?]

Refusing to be held back, stereotyped [?] anything less than out-there, Aron is very happy to be living his life on his own term[?]. just wake up, and that's my job – to live". Since his mother gave birth to him in the [?] of the New York, he has grown up around [?] brands. But Aron's own skate- and graff[?]-inspired clothing line, *Any New York Thing*. less about corporate success than a celeb[?] of NY, its culture and its people. In fact h[?] broke, but like many post 9 11 New Yo[?] his priorities have changed.

"New York is still in a crazy state r[?] now", says Aron, but that's the way he l[?] His legendary parties fuse the fashonistas[?] geeks and the skaters into one multi-tale[?] community of brute creative force. He's [?] got his own public-access chat show to f[?] the cause. As the good man says, in a c[?] where decent jobs can be hard to find, "I just using my mouth to get by".

Exhibit C

# Statement

**irt** inrecordtime
manufacturing • merchandising • creative services

**Tel:** 212-262-4414
**Fax:** 212-262-4512

Date:

Oct 31, 2007

Customer Account ID:

Fig 8

In Record Time, Inc.
575 8th Avenue • Suite 1900
New York, NY 10018
www.inrecordtime.com

Account Of: Figure 8 c/o Supreme
Attn Aaron Bondaroff
121 Wooster Street
New York, NY  10012

Amount Enclosed
$ _____

| Date | Date Due | Reference | Paid | Description | Amount | Balance |
|------|----------|-----------|------|-------------|--------|---------|
| 11/5/01 | 12/5/01 | 7010 | Full | PO# 6300A-C Development | 1,075.00 | 1,075.00 |
| 12/6/01 | 1/5/02 | 7080 | Full | PO# 6300-Pete Rose | 1,255.00 | 2,330.00 |
| 12/6/01 | 1/5/02 | 7081 | Full | PO# 6300-Helmet | 1,094.00 | 3,424.00 |
| 12/6/01 | 1/5/02 | 7082 | Full | PO# 6300-Dr Heckle | 2,209.50 | 5,633.50 |
| 12/6/01 | 1/5/02 | 7083 | Full | PO# 6300-Angel Dust | 1,801.00 | 7,434.50 |
| 12/28/01 | | 9969 | | Payment | -7,434.50 | 0.00 |
| 1/22/02 | 2/21/02 | 7170 | Full | PO# 6300-Double Dutch | 100.00 | 100.00 |
| 1/28/02 | | 10123 | | Payment | -100.00 | 0.00 |
| 4/30/02 | 5/30/02 | 7406 | Full | PO# 6648-Painters Caps | 1,927.50 | 1,927.50 |
| 4/30/02 | 5/30/02 | 7407 | Full | PO# 6647-Breaking Tra... | 1,905.50 | 3,833.00 |
| 4/30/02 | 5/30/02 | 7408 | Full | PO# 6647-Ellis Graphics | 2,544.00 | 6,377.00 |
| 4/30/02 | 5/30/02 | 7409 | Full | PO# 6647-Chamberlain | 2,915.20 | 9,292.20 |
| 4/30/02 | 5/30/02 | 7410 | Full | PO# 6647-Comic Graphic | 2,094.25 | 11,386.45 |
| 5/16/02 | | 10881 | | Payment | -11,386.45 | 0.00 |
| 11/19/02 | 12/19/02 | 8135 | Full | PO# 7064- Fall '02 | 4,511.00 | 4,511.00 |
| 11/19/02 | 12/19/02 | 8136 | Full | PO# 7064- Fall '02 | 4,640.50 | 9,151.50 |
| 11/19/02 | 12/19/02 | 8137 | Full | PO# 7064- Fall '02 | 4,745.00 | 13,896.50 |
| 11/29/02 | 12/29/02 | 8177 | Full | PO# 7064-Snowbeach | 2,644.00 | 16,540.50 |
| 11/29/02 | 12/29/02 | 8178 | Full | PO# 7064-Midnite Madness | 3,027.50 | 19,568.00 |
| 11/29/02 | 12/29/02 | 8179 | Full | PO# 7064-SKY HIGH | 3,040.00 | 22,608.00 |
| 11/29/02 | 12/29/02 | 8180 | Full | PO# 7064-Crack is Back | 2,956.00 | 25,564.00 |
| 11/29/02 | 12/29/02 | 8181 | Full | PO# 7064-Original | 2,064.50 | 27,628.50 |
| 11/29/02 | 12/29/02 | 208 | Apld | PO# 7064- Allowance | -500.00 | 27,128.50 |
| 12/5/02 | | 12041 | | Payment | -13,396.50 | 13,732.00 |
| 12/9/02 | | 12040 | | Payment | -13,732.00 | 0.00 |
| 12/12/02 | 1/11/03 | 8216 | Full | PO# 7310-Anthing | 1,308.00 | 1,308.00 |

| | Total | Continued |
|---|---|---|

| 0-30 | 31-60 | 61-90 | Over 90 days |
|------|-------|-------|--------------|
| 0.00 | 0.00 | 0.00 | 0.00 |

Thanks for your business.

# Statement

**irt** inrecordtime

manufacturing • merchandising • creative services

**Tel:** 212-262-4414
**Fax:** 212-262-4512

**In Record Time, Inc.**
575 8th Avenue • Suite 1900
New York, NY 10018
www.inrecordtime.com

Date:

Oct 31, 2007

Customer Account ID:

Fig 8

Account Of: Figure 8 c/o Supreme
Attn Aaron Bondaroff
121 Wooster Street
New York, NY  10012

Amount Enclosed
$ _____

| Date | Date Due | Reference | Paid | Description | Amount | Balance |
|------|----------|-----------|------|-------------|--------|---------|
| 12/12/02 | 1/11/03 | | Full | Sticker | 1,308.00 | 1,308.00 |
| 12/23/02 | | 12067 | | Payment | -1,308.00 | 0.00 |
| 1/24/03 | 2/23/03 | 8338 | Full | PO# Jacket | 62.00 | 62.00 |
| 2/26/03 | | 13041 | | Payment | -62.00 | 0.00 |
| 4/1/03 | 5/1/03 | 8490 | Full | PO# 7513-ARE Weapons | 278.00 | 278.00 |
| 4/21/03 | | 12923 | | Payment | -278.00 | 0.00 |
| 4/28/03 | 5/28/03 | 8545 | Full | PO# 7493- Anything T's | 2,627.00 | 2,627.00 |
| 4/28/03 | 5/28/03 | 8546 | Full | PO# 7493- Kid America | 3,322.00 | 5,949.00 |
| 4/28/03 | 5/28/03 | 8547 | Full | PO# 7493- OJ T'ee's | 2,254.50 | 8,203.50 |
| 4/28/03 | 5/28/03 | 8548 | Full | PO# 7493- French Fries T | 2,706.50 | 10,910.00 |
| 4/28/03 | 5/28/03 | 8549 | Full | PO# 7493- Big Red T's | 1,788.00 | 12,698.00 |
| 4/28/03 | 5/28/03 | 8550 | Full | PO# 7493- DUNK t's | 3,135.50 | 15,833.50 |
| 4/28/03 | 5/28/03 | 8551A | Full | PO# 7493- Grimace T's | 2,382.50 | 18,216.00 |
| 5/15/03 | 6/14/03 | 8600 | Full | PO# 7564-aNYthing Tees | 486.00 | 18,702.00 |
| 5/15/03 | 6/14/03 | 8601 | Full | PO# 7564-Dunk | 451.50 | 19,153.50 |
| 5/15/03 | 6/14/03 | 8602 | Full | PO# 7564-Grimace | 339.50 | 19,493.00 |
| 5/15/03 | 6/14/03 | 8603 | Full | PO# 7564-French Fries | 392.00 | 19,885.00 |
| 5/15/03 | 6/14/03 | 8604 | Full | PO# 7564- OJ Tees | 478.50 | 20,363.50 |
| 5/15/03 | 6/14/03 | 8605 | Full | PO# 7564-Big Red Machine | 339.50 | 20,703.00 |
| 5/15/03 | 6/14/03 | 8606 | Full | PO# 7564-Kid America | 775.00 | 21,478.00 |
| 5/19/03 | | 12769 | | Payment | -18,216.00 | 3,262.00 |
| 6/5/03 | | 12802 | | Payment | -3,262.00 | 0.00 |
| 8/13/03 | 9/12/03 | 8943 | Full | PO# 7793-Anthing Stkrs | 2,795.00 | 2,795.00 |
| 9/8/03 | | 14901 | | Payment | -2,795.00 | 0.00 |
| 11/24/03 | 12/24/03 | 9415 | Full | PO# 7822- Bowery | 5,551.00 | 5,551.00 |
| 11/24/03 | 12/24/03 | 9416 | Full | PO# 7822- aNYthing | 8,358.00 | 13,909.00 |
| 11/24/03 | 12/24/03 | 9417 | Full | PO# 7822- Bowery Hats | 4,543.00 | 18,452.00 |

| | Total | Continued |
|---|-------|-----------|

| 0-30 | 31-60 | 61-90 | Over 90 days |
|------|-------|-------|--------------|
| 0.00 | 0.00 | 0.00 | 0.00 |

Thanks for your business.

# **Statement**

**irt** inrecordtime

manufacturing • merchandising • creative services

Tel:  212-262-4414
Fax:  212-262-4512

In Record Time, Inc.
575 8th Avenue • Suite 1900
New York, NY 10018
www.inrecordtime.com

**Date:**

Oct 31, 2007

**Customer Account ID:**

Fig 8

Account Of:  Figure 8 c/o Supreme
Attn Aaron Bondaroff
121 Wooster Street
New York, NY  10012

Amount Enclosed
$ _____

| Date | Date Due | Reference | Paid | Description | Amount | Balance |
|------|----------|-----------|------|-------------|--------|---------|
| 11/24/03 | 12/24/03 |  | Full | PO# 7822- Bowery Hats | 4,543.00 | 18,452.00 |
| 11/24/03 | 12/24/03 | 9418 | Full | PO# 7822- What about NY | 3,422.50 | 21,874.50 |
| 11/24/03 | 12/24/03 | 9419 | Full | PO# 7822- SHARKS | 2,554.00 | 24,428.50 |
| 11/24/03 | 12/24/03 | 9420 | Full | PO# 7822- HomeRun | 3,173.75 | 27,602.25 |
| 11/24/03 | 12/24/03 | 9421 | Full | PO# 7822- Pleasure | 2,503.00 | 30,105.25 |
| 11/24/03 | 12/24/03 | 9422 | Full | PO# 7822- Damage | 3,183.00 | 33,288.25 |
| 12/11/03 |  | 14091 |  | Payment | -33,288.25 | 0.00 |
| 12/23/03 | 1/22/04 | 9524 | Full | PO# 8076-BIAS Tees | 407.00 | 407.00 |
| 2/11/04 |  | 13873 |  | Payment | -407.00 | 0.00 |
| 4/23/04 | 5/23/04 | 9874 | Full | PO# 8278- Crabs | 2,739.00 | 2,739.00 |
| 4/23/04 | 5/23/04 | 9875 | Full | PO# 8278- RATS | 2,797.25 | 5,536.25 |
| 4/23/04 | 5/23/04 | 9876 | Full | PO# 8278- ESPO | 1,675.00 | 7,211.25 |
| 4/23/04 | 5/23/04 | 9877 | Full | PO# 8278- Kilroy | 3,663.00 | 10,874.25 |
| 4/23/04 | 5/23/04 | 9879 | Full | PO# 8278- Germs | 2,508.50 | 13,382.75 |
| 4/23/04 | 5/23/04 | 9878 | Full | PO# 8278- Jail | 2,195.00 | 15,577.75 |
| 4/23/04 | 5/23/04 | 9881 | Full | PO# 8278- BRANDY | 4,515.50 | 20,093.25 |
| 4/23/04 | 5/23/04 | 9880 | Full | PO# 8278- Mr aNYthing | 3,218.50 | 23,311.75 |
| 4/23/04 | 5/23/04 | 9882 | Full | PO# 8278- SPLAY | 1,931.00 | 25,242.75 |
| 4/23/04 | 5/23/04 | 9883 | Full | PO# 8278- BIAS | 2,397.00 | 27,639.75 |
| 4/23/04 | 5/23/04 | 9884 | Full | PO# 8278- aNYthing L/S | 2,733.00 | 30,372.75 |
| 5/6/04 | 6/5/04 | 9919 | Full | PO# 8420- INR 691-2 | 2,870.00 | 33,242.75 |
| 5/21/04 |  | 15318 |  | Payment | -30,372.75 | 2,870.00 |
| 5/28/04 | 6/27/04 | 10027 | Full | PO# 8448-Mr aNYthing | 1,898.25 | 4,768.25 |
| 5/28/04 | 6/27/04 | 10032 | Full | PO# 8448-CRABS | 1,069.50 | 5,837.75 |
| 5/28/04 | 6/27/04 | 10031 | Full | PO# 8448-BIAS | 1,773.50 | 7,611.25 |
| 5/28/04 | 6/27/04 | 10030 | Full | PO# 8448- Germs | 1,571.25 | 9,182.50 |
| 5/28/04 | 6/27/04 | 10029 | Full | PO# 8448- EXPO | 1,285.00 | 10,467.50 |

| | Total | Continued |
|---|-------|-----------|

| 0-30 | 31-60 | 61-90 | Over 90 days |
|------|-------|-------|--------------|
| 0.00 | 0.00 | 0.00 | 0.00 |

Thanks for your business.

# Statement

**irt** inrecordtime

manufacturing • merchandising • creative services

**Tel:** 212-262-4414
**Fax:** 212-262-4512

**Date:**

Oct 31, 2007

**Customer Account ID:**

Fig 8

In Record Time, Inc.
575 8th Avenue • Suite 1900
New York, NY 10018
www.inrecordtime.com

Account Of: Figure 8 c/o Supreme
Attn Aaron Bondaroff
121 Wooster Street
New York, NY 10012

Amount Enclosed
$ _____

| Date | Date Due | Reference | Paid | Description | Amount | Balance |
|------|----------|-----------|------|-------------|--------|---------|
| 5/28/04 | 6/27/04 | | Full | PO# 8448- EXPO | 1,285.00 | 10,467.50 |
| 5/28/04 | 6/27/04 | | Full | PO# 8448-Brandy | 1,902.75 | 12,370.25 |
| 6/25/04 | | 10028 | | Payment | -2,870.00 | 9,500.25 |
| 7/19/04 | | 15428 | | Prepayment | -4,000.00 | 5,500.25 |
| 8/11/04 | | 21400442 | Apld | Payment | -5,500.25 | 0.00 |
| | | 93 | | | | |
| | | | | | **Total** | 0.00 |

| 0-30 | 31-60 | 61-90 | Over 90 days |
|------|-------|-------|--------------|
| 0.00 | 0.00 | 0.00 | 0.00 |

Thanks for your business.

Exhibit D

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

## SHAREHOLDERS' AGREEMENT

AGREEMENT made and entered into as of this _____ day of         September, 2004, with reference to aNYthing Corp , a domestic corporation, (hereinafter "Corporation"), by and between Kiernen Costello residing at 70 John Street, Brooklyn, NY 11201 ( hereinafter referred to as "Costello") and Aaron Bondaroff residing at 135 W. 10th Street, Apt. 7, New York, NY 10012 (hereinafter referred to as "Bondaroff")and both (hereinafter referred to as "Shareholders").

### WITNESSETH:

WHEREAS, the Corporation is authorized to issue 200 shares of common stock, of which twelve (12) shares have been issued to each of the Shareholders, representing all of the issued and outstanding shares of the Corporation; and

WHEREAS, the Shareholders desire to provide continuity in the management and policies of the Corporation and to provide for their permanent employment as officers of the Corporation and to prevent the alienation of shares of stock in the Corporation to other persons in any manner other than as provided in this agreement; and

WHEREAS, the Corporation recognizes that such continuity of management and policy is in the best interests of the Corporation; and

WHEREAS, to the foregoing ends, the parties hereto desire to make provisions with respect to the ownership, transfer or other disposition of stock in the Corporation during the lifetime and upon the death of the Shareholders; and

WHEREAS, the Shareholders desire to express their agreement concerning the management and control of the affairs of the Corporation, including, but not limited to, management of its business, division of its profits, and distribution of its assets on liquidation, and to promote the purposes of the Corporation as stated in the Articles of Incorporation,

Draft 49

Page 1 of  18

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the parties do hereby covenant and agree as follows:

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION

1.1    Party.   Where the context permits, the term "party" shall include the Corporation and all of the Shareholders, as well as any transferees who take subject to this agreement, and the successors in interest of any of the shareholders or transferees

1.2    Share.   The term "share" or "shares" shall include all of the capital stock of the Corporation of every class, unless otherwise stated, and any additions or substitutions therefor, including voting trust certificates which may hereafter be acquired, whether by purchase, subscription, ga stock dividend or otherwise, by any of the Shareholders or transferees who are parties to this agreement.

1.3    Shareholders.   The term "shareholders" shall include the parties so designated in this agreement and all persons subsequently becoming the owners or holders of shares which are subject to the terms hereof and the successors in interest of any of the aforementioned.

1.4    Sale.   The term "sale," "sell," or "offer" as used in Article V with reference to any disposition or proposed disposition of shares shall mean and include any transfer (except as permitted in Provision 8.5) gift, pledge, encumbrance or any other act, transaction or proceeding whereby a shareholder's rights or ownership are disposed of or in any way impaired or affected.

1.5    Legal Representative.   The term "legal representative" shall mean and include any person or persons empowered or entitled to act with respect to the property of a deceased or incompetent shareholder and shall include specifically, but not exclusively, any of the following: executors, personal representatives, administrators, conservators or heirs.

Draft #9

1 6    Proportionate Amount.  The term "proportionate amount" shall mean that portion of the shares offered for sale or required to be purchased which is the number of shares owned by a shareholder bears to the total number of shares being held by all persons who are entitled or obligated to purchase shares being offered for sale and who signify their intention to purchase as provided in this agreement. If only one person signifies an intention to purchase then the term "proportionate amount" shall mean all of the shares of stock available for purchase.

1.7    Construction    Wherever applicable in this agreement, the singular and plural shall be freely interchangeable, and the masculine, feminine and neuter shall be freely interchangeable. The article and provision headings or titles shall not in any way control the construction of the language herein, such headings having been inserted solely for the purpose of simplified reference.

## ARTICLE II

## BOARD OF DIRECTORS AND EMPLOYMENT OF OFFICERS

2.1    Directors.     So long as Costello and Bondaroff shall remain shareholders of the Corporation, each shall be a director of the Corporation. All elections of directors and regular meetings of directors and shareholders are hereby waived

2.2    Managing Director.    Costello shall be the managing Director of the Corporation, and shall manage the day-to-day operations of the business affairs of the Corporation which shall include, but are not limited to the following:

        a.    All disbursements of the Corporation required for daily operation.

        b    All decisions regarding overhead, production, labor and employment.

        c.    All decisions regarding purchases and expenses

        d    All decisions regarding location for corporate offices, locations for offices/factories for production and the locations where products shall be sold

        e.    All decisions regarding advertising and promotions

        f.    All decisions regarding use, control and enforcements of the trademark

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304 wpd

"aNYthing" (hereinafter TM) and the licensing agreement executed simultaneous herewith.

Costello shall be authorized to issue and sign any checks required to perform the duties stated in this Provision 2.2.

2.3    Actions requiring the unanimous consent and approval of the directors of the Corporation:

(a)    change of the general type of business activity of the Corporation.

(b)    entry into a partnership or similar business relationship.

(c)    distribution, merger, consolidation, reorganization or recapitalization of the Corporation.

(d)    amendment or repeal of the Articles of Incorporation of the Corporation.

(e)    issuance of any new shares of stock in the Corporation or the creation of any other form of equity or debt instrument of any kind.

(f)    amendment of this Agreement.

(g)    altering of the title, duties, and other terms of employment of Officers, including the annual salary, as set forth in this Agreement and the other above-mentioned documents.

(h)    transfer of all, or substantially all, of the assets of the corporation;

(i)    liquidation or dissolution of the Corporation;

2.4    Any director shall be authorized signatories on the bank account(s). Except as expressly provided in Provision 2.2, no director may issue amounts of money in excess of $1,000.00 in one or a series of payments to the same payee without authorization from the other director(s).

2.5    In making decisions regarding the corporation, if directors cannot agree on a decision and then a resolution, any director may submit a written request to the corporation for the use of an arbitrator to provide a resolution. The Corporation shall bear the cost of all phases of the arbitration. Submission to arbitration shall be made within seven (7) days after one of the directors makes a written request to the Corporation. Arbitrator shall be chosen through the American Arbitration Association.

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

2.6    As long as Costello and Bondaroff are Directors, they shall elect Bondaroff as President of the Corporation and Costello as Secretary and Treasurer of the Corporation.

2.7    Directors shall not be compensated for their position as a director of the Corporation.

2.8    Each shareholder shall repay the Corporation any amount of compensation that the Internal Revenue Service has determined to be nondeductible because excessive.

**ARTICLE III**
**DUTIES AND OBLIGATIONS**

3.1    Costello agrees to invest the minimum sum of $125,000.00 in the Corporation.

3.2    Bondaroff shall contribute a license agreement (hereinafter "License") for use of the TM to the Corporation, which License shall be in full force and effect until dissolution of the Corporation The License is made a part of this Shareholders Agreement and attached hereto as Exhibit "A." If required, Bonderoff shall renew the License with the Corporation at the end of each term. If Bonderoff fails to renew such License, the Corporation shall be entitled to all relief at law or in equity including, but not be limited to injunctive relief. Bonderoff shall be solely liable for all costs and legal fees incurred by the Corporation due to such failure to renew the License and keep same in full force and effect.

3.3    Bondaroff shall be the creator of the products marketed and sold by the Corporation and shall be required to continue to create and design various new products, merchandise and wares that shall be marketed and sold by the Corporation to enhance the Corporation's capability to develop, expand and flourish.

3.4    Bondaroff shall continually be required to update the Corporation's various products, merchandise and wares to make same more marketable and enhance the Corporation's capability to develop, expand and flourish.

2005120708[

Certificate of Assumed Name

of

**ANYTHING CORP.**

Pursuant to Section 130 of the General Business Law

1.  The name of the Corporation is **ANYTHING CORP.**

2   The Corporation was formed under the Business Corporation Law of New York

3   The assumed name of the above-named corporation shall be:

**A NEW YORK THING**

4   The principal place of business in New York State is to be located at:

**135 HENRY STREET, #2**
**NEW YORK, NY 10002**

5   The County in which the Corporation shall be authorized to conduct business under the assumed name is the county of **NEW YORK**

6   Each address where the Corporation shall be authorized to conduct business under the assumed name is as follows:

**135 HENRY STREET, #2**
**NEW YORK, NY 10002**
**COUNTY OF NEW YORK**

7   An officer of the corporation is **KIERNEN COSTELLO, PRESIDENT**

IN WITNESS WHEREOF the undersigned being the **PRESIDENT** of the corporation hereby executes this certificate of assumed name

DATED

**KIERNEN COSTELLO, PRESIDENT**

— 1 —