200512070 81

Certificate of Assumed Name

of

ANYTHING CORP.

# BLU-39

RECEIVED 2005 DEC -7 PM 12: 00

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED DEC 07 2005
TAX $
BY

040421000496

FILED BY:

BLUMBERG *EXCELSIOR* CORPORATE SERVICES
52 SOUTH PEARL STREET- 2ND FLR
ALBANY, NY 12207

—2—

*State of New York    }*
*Department of State }*  *ss:*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*

**March 6, 2007**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

0404210006

CERTIFICATE OF INCORPORATION

OF

**ANYTHING CORP.**

Pursuant to Section 402 of the Business Corporation Law

I, the undersigned, a natural person of at least 18 years of age, for the purpose of forming a corporation under Section 402 of the Business Corporation Law of the State of New York hereby certify:

FIRST:      The name of the corporation is:

**ANYTHING CORP.**

SECOND:      The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under Article IV of the Business Corporation Law, except that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

THIRD:      The office of the corporation is to be located in the County of **NEW YORK,** State of New York.

FOURTH:      The aggregate number of shares which the corporation shall have the authority to issue is **TWO HUNDRED,** each of which shall be common stock with no par value.

FIFTH:      The Secretary of State is designated as agent of the corporation upon whom process against it may be served.  The post office address to which the Secretary of State shall mail a copy of any process against the corporation served upon him is:

**C/O ALINA SHAFRANOV, ESQ.**
**51 MACDOUGAL ST., #416**
**NEW YORK, NY 10012**

SIXTH:     No director of the corporation shall have personal liability to the corporation or to its shareholders for damages for any breach of duty in such capacity, provided, however, that the provision shall not eliminate or limit:

(a)    the liability of any director of the corporation if a judgment or other final adjudication adverse to him establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled or, with respect to any director of the corporation, that his acts violated Section 719 of the Business Corporation Law of the State of New York, or

(b)    the liability of a director for any act or omission prior to the final adoption of this article.

SEVENTH:   The holders of any of the corporation's equity shares shall be entitled to preemptive rights in accordance with the provisions of BCL section 622.

IN WITNESS WHEREOF, the undersigned incorporator has executed this certificate of incorporation.

4/21/04

*Sharon Babala*

Sharon Babala, Incorporator
BlumbergExcelsior Corporate Services, Inc.
52 South Pearl Street
Albany, New York 12207

2



040421000496

**Certificate of Incorporation**

of

**ANYTHING CORP.**

**Pursuant to Section 402 of the Business Corporation Law**



STATE OF NEW YORK
DEPARTMENT OF STATE
FILED APR 2 1 2004
TAX $ _10.00_
BY: _JLo_
new york

# BLU-39
# DRAW DOWN

Filed By:
BlumbergExcelsior Corporate Services,
Inc.
52 South Pearl Street, 2nd Floor
Albany, NY 12207

2004 APR 21 AH11: 12
RECEIVED

3

518

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

3.5    Bondaroff shall assist with planning and devising of slogans, advertisements, promotions and other marketing ideas and techniques used to sell the products created and sold by the Corporation.

3.6    The Corporation shall market and sell the following items created by Bondaroff:
    a.    Clothing Line, which includes T-shirts
    b.    Sneakers
    c.    Bed Sheets
    d    Other products mutually agreed upon between all shareholders.

3.7    Bondaroff shall license the TM to the Corporation for the following purposes:
    a.    Use with regard to the following products:
        i.    Clothing Line, which includes T-shirts
        ii.    Sneakers
        iii.    Bed Sheets
    b.    Use for the production and marketing of music, plays and/or motion pictures.
    c.    Use for publishing and labeling, marking, bookplating, identifying and/or naming written works such as books, magazines, compositions and/or scripts which may be used for plays or motion pictures.
    d.    Other products mutually agreed upon between all shareholders.

3.8    Bondaroff shall not, independent of the Corporation, use the TM or license same for use to promote and sell similar products to those stated in Provision 3.7 or 3.8.

3.9    Costello and Bondaroff agree to devote their professional time, attention and energies to the interests of the corporation for at least twenty (20) hours during each week of each calendar year during the life of the Corporation.

Draft #9

E:\eNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

## ARTICLE IV
### PROFITS, LOSSES AND EXPENSES

4.1    <u>Revenues and Profits.</u>    All revenues of the Corporation shall be applied first to pay all debts owed to parties who are not shareholders or employees of the Corporation or members of their immediate families, then to all operating expenses of the Corporation (including taxes) and then to repayment of loans made by the shareholders, officers or employees and their immediate family members. When all of the above items have been paid in full, the first $25,000.00 in profits of the Corporation shall be given to Bondaroff. All subsequent profits of the Corporation shall be divided among the shareholders in accordance with their respective stock interests. All losses, including non-cash losses, shall be borne among the shareholders in proportion to their respective percentage of stock interest, and in the event additional capital is required to be contributed to sustain the Corporation, same shall be the obligation of the shareholders in proportion to their respective percentage of stock interest as set forth in this Article's Provisions 4.2 and 4.3.

4.2    <u>Additional Capital Contributions.</u>    Upon resolution of not less than a majority of the outstanding shares of stock entitled to vote, the shareholders shall contribute capital to the Corporation in an amount directly proportionate to the number of shares held by each shareholder. Any resolution as above set forth shall therein specify the amount of additional capital to be contributed for each share of stock so held, as well as the terms of payment.

4.3.    <u>Additional Contributions.</u> Should any shareholder refuse to contribute as above set forth, then the contribution made by the other shareholders shall be deemed a debt of the Corporation and shall be repayable to the contributing shareholder(s) with interest at the prime rate (as defined elsewhere herein) plus two (2%) per cent and shall be subject to priority in repayment upon dissolution of the Corporation. There shall be no personal liability on the part of any shareholder in the event that shareholder fails to contribute additional monies to the Corporation.

## ARTICLE V

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

## TRANSFER OF SHARES DURING LIFETIME OF SHAREHOLDERS

5.1    a.    <u>Notice of Sale - Options to Purchase.</u>    In the event that any shareholder shall, during his lifetime, desire or be required to sell all or any part of the shares of stock of the Corporation held by him, then the shareholder shall give notice in writing to the Corporation, and he shall state therein:

        i.    His desire and intention to dispose of stock; and

        ii    The full details of the bona fide offer or other bona fide transaction which includes the name and description of any non-shareholder potential purchaser and the full details of the offer to such purchaser; and

        iii.    The number and description of the shares of stock to be sold

The Corporation shall have the option to prevent the sale of shares to any party if Seller fails to serve proper notice.

        b.    For a period of thirty (30) days after receipt of notice by the Corporation, the shares referred to in the notice shall be subject to successive options to purchase at the purchase price defined in Provision 7.1. The first option shall be in favor of the Corporation, which shall have the right to acquire all or any part of such shares. The second option shall be in the favor of all shareholders (other than the selling shareholder), who shall have the right to acquire all shares not acquired by the Corporation under its prior option. If more than one such other shareholder desires to purchase, then each such shareholder shall have an option to acquire a proportionate amount of the shares, based on percentage of ownership of stock. If an option granted in this Provision 5.1 is exercised, it must be exercised with respect to all of the shares being offered for sale; provided however, that the Corporation may exercise an option for less than all of the shares provided that the remaining shareholders thereafter purchase the balance of the shares subject to option.

5.2    <u>Notice of Meeting to Consider Exercise of Option.</u>    Immediately after receipt of notice of shareholders' intention to sell, the Corporation shall send notice to all shareholders of record and to the members of its board of directors, calling a special joint meeting of the Board of Directors and shareholders, which meeting shall be held not later than twenty days (20) and not sooner than ten days

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

(10) after receipt of the shareholder's notice of intention to sell. This meeting shall be held for the purpose of considering and exercising the options granted herein. The notice of meeting shall state the purpose of the meeting and shall set forth all information contained in the shareholder's notice of his intention to sell his stock. At such meeting, any shareholder who proposed to sell his shares who is also a director of the Corporation shall be counted as present at such meeting for the purposes of a quorum but shall not be entitled to vote on the questions of whether such shares shall be purchased by the Corporation. No shareholder shall refrain from attending any such meeting nor cause any director or shareholder to refrain from attending any such meeting for the purposes of preventing a quorum.

5.3    Exercise of Options.    In the event that, at the meeting held for that purpose, the Shareholders unanimously authorize the Corporation to exercise its option, the Corporation shall do so by a writing signed by its authorized officers, stating therein the number of shares it desires to acquire. With respect to shares not acquired by the Corporation, each shareholder, if he desires to exercise his option, shall do so by a writing signed by him, stating therein how many of the shares available for purchase by him he desires to acquire in accordance with the terms of Provision 5. 1. Copies of all writings indicating the exercise of options shall be delivered to the shareholder whose shares are being purchased, and the originals shall be placed in the files of the Corporation and be held open to inspection by any party to this agreement. The sale shall be consummated as provided in Article VII.

5.4.    Non-shareholder Acquiring Interest in Shares.    In the event that any share(s) shall become subject to an interest of a party who is not a shareholder, whether by judicial decree in a proceeding for divorce or dissolution of marriage, a bankruptcy proceeding, or a proceeding in which an interest is obtained by a judgment creditor or lienor, the shareholder whose shares shall become subject to such interest shall be deemed a "deceased shareholder" to the extent of all such affected shares, and all such shares shall be purchased by the Corporation and/or the remaining shareholders in accordance with Article VI of this Agreement, except that payment for all shares so purchased shall be made in accordance with Provision 7.2. A new shareholder shall accept such shares subject to the terms of this Agreement.

5.5    Retiring Shareholder.    In the event any shareholder retires from the Corporation by sale

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304 .wpd

of the stock to the Corporation or the remaining shareholders, the remaining shareholders agree to indemnify said retiring shareholder whether as shareholder, officer or director against any loss sustained by virtue of this participation in the Corporation, which loss is sustained subsequent to his retiring from the Corporation. This indemnification shall be deemed to include any guarantees executed on behalf of the Corporation, except in the event the Corporation is in default at the time such shareholder retires from the Corporation in which event, the retiring shareholder shall remain liable up to the value of the guaranteed indebtedness which is in default at the time of his retiring from the Corporation.

## ARTICLE VI

## PURCHASE AND SALE OF SHARES UPON DEATH OF SHAREHOLDERS

6.1    Corporation's Obligation to Purchase.    Upon the death of any shareholder, the Corporation, or the surviving shareholders, shall purchase all shares of stock in the Corporation owned by the shareholder at the time of his death, and the legal representative of the deceased shareholder shall sell same. Payment shall be made to the legal representative of the shareholder selling such shares. The price to be paid for such shares shall be the purchase price as defined in Provision 7.1, and the sale shall be consummated as provided in Provision 7.3 of this Agreement.

6.2    Successive Obligation to Purchase.    In the event the Corporation elects not to purchase the stock or elects to purchase the stock, as provided in Section 6.1, but is legally unable to purchase any or all of the shares referred to in Provision 6.1, then the remaining shareholders shall have the option to purchase the shares as stated in Provision 5.3. However, if no shareholders desire to purchase, then all of the remaining shareholders shall have the obligation to purchase the shares not purchased by the Corporation. In the event there is more than one such remaining shareholder, each such shareholder shall be obligated to purchase a proportionate amount of shares being sold. The price to be paid by the remaining shareholders for shares not purchased by the Corporation shall be the purchase price as defined in provision 7.1, and the sale shall be consummated as provided in Provision 7.3.

## ARTICLE VII

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

## PURCHASE PRICE, PAYMENT, AND DELIVERY OF SHARES

7.1    <u>Purchase Price.</u>        Except in the event of a third-party offer, the purchase price to be paid for shares sold pursuant to Article V and Article VI of this Agreement shall be determined in the following manner. At least annually, or more frequently, the price of each share, including the value of the Corporation as a going concern, shall be fixed by the unanimous consent of the shareholders then holding shares and shall be endorsed on a certificate of value attached to this Agreement. Each value so endorsed shall be verified by the signatures of all of the shareholders. In the event that the shareholders fail to establish a per share value during the then current fiscal year, the value then to be utilized by the Corporation and the shareholders shall be the value determined by appraisal conducted by the Corporation's accountant of record, who shall be required to employ, at the expense of the Corporation, a certified and duly qualified appraiser, to be agreed upon by the parties, to provide a written appraisal of the value of the Corporation. In the event that the parties cannot agree upon an appraiser, then each disputing party shall select an appraiser and the appraisers thus selected shall agree upon one appraiser, whose determination as to the value of the Corporation shall be controlling. In making the appraisal of the value of the shares of the Corporation, all assets shall be valued at its fair market value, and all personal property shall be valued at the replacement cost where appropriate. Corporate good will shall be considered in the valuation of the shares except that the goodwill created by any selling, retiring or deceased shareholder shall not be considered. The Corporation shall bear the cost of all phases of the valuation.

In the event of a third party offer to purchase any party's shares, the purchase price shall be determined by the offer or the fair market value, whichever is higher. The Corporation and Shareholders shall have the first option to purchase in accordance with Provision 5.1 (b) under the same terms and conditions set forth in the offer. In the event the Offeree fails to close within sixty (60) days of the earlier of the expiration of option or receipt of the written waiver of the Corporation and Shareholder option to buy, the offer shall no longer be valid. If the offer is not timely consummated, Offeree may not entertain any new offers for a period of twelve (12) months from the end of the sixty (60) day closing period.

Draft #9

E:\o\NYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

7.2    Payment for Shares Purchased During Lifetime.    Except as otherwise provided in this provision, the Closing of any transfer shall take place within sixty (60) days after the acceptance of an offer to sell. Purchaser may obtain financing from any institutional lender. Unless otherwise agreed the purchase price shall be all cash. However, if the value of the shares is worth $25,000.00 or more and the Purchaser cannot pay in full at the closing, then payment for the shares shall be paid as follows:

> Ten (10%) per cent of the value shall be paid at the closing and the balance shall be paid in equal and consecutive monthly payments over five (5) years together with fixed interest at the prime rate on the date of purchase commencing one (1) month from the date of purchase and delivery of the duly executed agreements by seller. Said closing shall occur within thirty (30) days of the exercising of the options provided for herein. The Corporation shall guarantee any indebtedness and shall provide the Seller with a security interest in all assets of the Corporation. The Purchaser shall co-operate in executing all documents on behalf of both the Corporation and the individual.

7.3    Payment for Shares Purchased on Death.    Payment for shares purchased pursuant to Article VI shall be made within thirty (30) days after receipt of life insurance proceeds, if the Corporation purchased life insurance for such purpose. Payment may be funded, in whole or in part, by life insurance owned by the Corporation or by a partner, as applicable, on the life of the deceased partner. To the extent that proceeds of life insurance are in excess of the purchase price to be paid to the personal representative of the deceased Shareholder, the Corporation, or the owner of the policy as applicable, shall be entitled to retain such proceeds. To the extent that proceeds of life insurance are insufficient to fund the entire purchase price, the insurance proceeds shall be paid as the down payment to the personal representative of the deceased shareholder and the remainder of the purchase price, shall be payable as Purchaser chooses, either in one lump sum or in equal and consecutive monthly payments over five (5) years together with fixed interest at the prime rate on the date of purchase commencing one (1) month from date of purchase and delivery of duly executed agreement by Seller.

7.4    Indebtedness of Shareholder.    In the event a shareholder, or deceased shareholder,

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304 .wpd

whose shares are being purchased is indebted to the Corporation, the Corporation may, if it purchased stock from said shareholder, credit the indebtedness due from the shareholder against the purchase price of the stock being purchased by it.   Such amount shall first be credited against the principal balance of any note given for the purchase of said stock and the excess. if any, shall be credited against any cash payment to be made.

7.5    Delivery of Shares.    All shares being purchased shall be delivered to the purchaser by the shareholder or to the legal representative of a deceased shareholder concurrently with the delivery of the consideration therefor to the shareholder or to the legal representative of the deceased shareholder. Prior to delivery, the selling shareholder or the legal representative of a deceased shareholder shall endorse the certificates for the shares being purchased pursuant to the direction of the purchaser.

7.6    Interest Rate.    Any interest reflected herein shall be at the variable rate equal to the average prime rate established from time to time by commercial banking institutions in New York State, adjusted every ninety (90) days. The prime rate is defined herein to mean the rate charged from time to time by commercial banks to their largest and most credit worthy industrial customers on unsecured notes of ninety (90) day maturity.

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.1    Default and Remedy.    A Shareholder under this Agreement shall default ("Defaulting Party") by failing to comply with a provision of this agreement.  Notice of default shall be served upon the Defaulting Party in accordance with Provision 8.7 of this agreement.  Upon receipt of notice of default, the Defaulting Party shall have twenty (20) days to remedy such default or any longer period of time as agreed upon by the parties   If a Defaulting Party fails to timely cure or receives a notice of default regarding the same default three times in a one year period, the Defaulting Party shall no longer have the option to cure.  Beyond any notice and cure periods, or in the event of a noncurable default as set forth above, the Corporation shall be entitled to all relief at law or in equity including, but not be limited to injunctive relief.  The Defaulting Party shall be solely liable for all costs and legal fees

Draft #9

Page 13 of  18

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

incurred by the Corporation due to such default. Furthermore, the Corporation and Non-defaulting Party shall have the option to purchase the Defaulting Party's shares in accordance with Provision 5.1(b) for a period of thirty (30) days after the expiration of the cure period or upon notice of the noncurable default.

8.2    Non-Exercise of Options.    In the event of the non-exercise of any option to which a share of stock is subject hereunder unless provided to the contrary elsewhere in this agreement, the shareholder owning such share may thereafter proceed, without any limitation or restriction hereunder and without the endorsement set forth in Provision 8.4, to sell and dispose of such shares to a non-shareholder, provided the sale is to the persons and in the manner of the notice of sale as set forth in Provision 5.1 and the sale is consummated within sixty (60) days after the shareholder desiring to sell received notice of the non-exercise of the last remaining option, or after the expiration of such option. The shares must be sold to a non-shareholder at a price as determined by Provision 7.1 or at a higher value.

8.3    Waiver of Option..    An option may be waived with respect to any specific transfer of shares:

a.    By the Corporation, by a resolution adopted by a majority of the Board of Directors (at any meeting of the Board called to consider such a waiver, any shareholder who proposes to sell his shares who is also a director of the Corporation shall be counted as present at such meeting for the purposes of a quorum but shall be not be entitled to vote on the question of whether the Corporation shall waive its option), or

b.    By the shareholders through a written instrument to that effect executed by each of them and filed with the Corporation and other shareholders. Any such waiver shall be limited to the Shareholder who submitted the waiver and to the particular transfer of shares specified in the resolution or instrument executed by the shareholders and it shall not apply to options herein granted with respect to any of the remaining shares of the shareholder obtaining the waiver or to the shares of any other shareholder; provided, however, that unless the waiver expressly provides to the contrary, any shares transferred pursuant to waiver, executed in accordance with the terms of this provision, shall remain subject to the options and obligations herein contained and the transferee shall be bound by all of the

Draft #9

Page 14 of 18

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

terms and provisions of this agreement as a shareholder

    8.4    <u>Term.</u>  This agreement shall terminate upon the occurrence of any of the following events:

    a    Cessation of the business conducted by the Corporation;

    b.    Bankruptcy, receivership or dissolution of Corporation;

    c.    The voluntary agreement of all parties who are then bound by the terms hereof.

    8.5    <u>Endorsement on Stock Certificates.</u>   There shall be placed or endorsed upon all certificates presently owned by the shareholders, or which may hereafter be issued to the shareholders, an inscription reciting the existence of this agreement, which inscription shall be substantially as follows: "Sale, assignment, transfer or other alienation of the shares evidenced by this certificate is subject to options in favor of the Corporation (or named parties) and its shareholders contained in, and other limitations terms and conditions of, a certain agreement dated , _____. A copy of this agreement is on file in the office of the secretary of the corporation. The terms and conditions of this agreement are binding upon the corporation, shareholders and all holders and transferees of the certificates."

    8.6    <u>Prohibition on Alienation of Stock.</u>   As long as this agreement shall be effective with respect to all or any of the shares of capital stock of the Corporation, the shareholders agree that none of said stock now owned or hereafter acquired by them, or any interest or right therein, shall be directly or indirectly sold, transferred or assigned, except in accordance with the terms and provisions hereof, and they shall not be directly or indirectly mortgaged, pledged, hypothecated, encumbered, given away or otherwise disposed of or permitted or suffered to be disposed of, either by voluntary or involuntary action except in accordance with the terms and provisions of this agreement. Anything contrary herein notwithstanding, a shareholder who owns shares subject to the terms of this agreement may transfer the ownership of such shares to any other shareholder who, at the time of said transfer, also owns shares which are subject to the terms of this agreement, provided, however, that all remaining shareholders purchase or otherwise receive a proportionately equal number of shares from the transferring shareholder. The shares so transferred shall remain subject to the terms and conditions of this agreement and shall bear the endorsement set forth in Provision 8.4.

Draft #9

E:\aNYthing Corp\SHAREHOLDER'S AGREEMENT Costello & Bondaroff draft # 9 revised 090304.wpd

8.7.   Confidentiality.        The Shareholders agree that they will not, at any time during or
after the Term, make use of or divulge to any other person, firm, corporation, or other entity any trade or
business secret, process, method or means, or any other confidential information concerning the business
or policies of the Corporation which he may have learned in connection with his employment or
ownership hereunder during the Term hereof. For purposes of this Agreement, a "trade or business
secret, process, method or means, or any other confidential information" shall mean and include
information in any form, treated as confidential or as a trade secret by the Corporation. The Shareholders
recognize that all such documents objects, whether developed by him or by someone else, will be the sole
exclusive property of the Corporation.   Upon termination of his association hereunder, the Shareholder
shall forthwith deliver to the Corporation all such Confidential Information, including, without
limitation, all lists of customers, source codes, correspondence, passwords, accounts, records and any
other documents or property made or held by him or under his control in relation to the business or
affairs of the Corporation, and no copy of any such Confidential Information shall be retained by him.

8.8   Notice.

a.      Any notice required or permitted to be given under the terms of this agreement shall be
sufficiently given when and if it is in writing and delivered in person or mailed by United
States certified or registered mail, return receipt requested postage prepaid, or overnight delivery via a
reputable national courier addressed:

> (i) If to the Corporation:       C/o Mitchell Mund, Esq.
>
> 100-15 Queens Blvd. Suite #1
>
> Forest Hills, NY 11375-2452
>
> or to such other address as shall constitute the main office of the corporation, or

> (ii)     If to a shareholder, to the address disclosed by the records of the corporation, or
> such other address as any party hereto shall designate in writing.
> Notice so mailed shall be effective as of the date of mailing.

8.9   Covenant Not to Compete.

Draft #9

Page 16 of   18

a.    Shareholders covenant and agree that while owning shares in the Corporation, shareholders shall not, except with the written consent of the Corporation, either directly or indirectly, engage in the production, marketing and sale of products similar in nature to those marketed and sold by the Corporation and/or those products set forth in Provision 3.9.

b.    In the event a shareholder's shares are purchased by the Corporation, another shareholder or a non-shareholder, or the Corporation is terminated for whatever reason, the former Shareholder shall not, for a period of two (2) years directly or indirectly, engage in the production, marketing and sale of products similar in nature to those sold by the Corporation and/or those products set forth in Provision 3.9.

8.10    Separability.    Each provision of this agreement and each sentence, clause or phrase contained in such provision shall be considered separable and if for any reason any provision or any sentence, clause, or phrase contained in such provision is determined to be invalid or contrary to any existing or future laws, such invalidity shall not impair the operation of or affect that portion of this agreement which is valid.

8.11    Specific Performance.    The stock of the Corporation cannot be readily purchased or sold in the open market, and for that reason among others, the parties will be irreparably damaged in the event this agreement is not specifically enforced. Should any controversy arise concerning the sale or disposition of any of the stock, an injunction may be issued restraining any sale or disposition pending the determination of such controversy. In the event of any controversy concerning the right or obligation to sell any of the stock, such right or obligation  shall be enforceable in a court of equity by a decree of specific performance.  Such remedy shall, however, be cumulative and not exclusive and shall be in addition to any other remedy which the parties may have.

8.12    Amendments.    Any amendments or modifications to this agreement shall be in writing signed by all parties who are then bound by the terms of this agreement.

8.13    Counterparts.    This agreement may be executed in several counterparts, each of which, when so executed, may be deemed to be an original.

Draft #9

8.14 __Benefit.__        This agreement shall be binding upon and inure to the benefit of the heirs, legal representatives and, to the extent and in the manner herein provided, to the successors and assigns of the parties hereto.

8.15 __Entire Agreement.__        This agreement contains the entire agreement between shareholders and corporation and all prior negotiations and agreements are merged herein and superseded hereby.

8.16 __Governing Law.__        This agreement shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the shareholders have affixed their hands and seals, and aNYthing Corp., has caused this instrument to be executed by its officers there unto duly enabled and its corporate seal to be affixed hereto by its secretary, all as of the day and year first above written.

aNYthing Corp.

By:_____

_____

Kiernen Costello

_____

Aaron Bondaroff

Exhibit E

*State of New York*   *}* *ss:*
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*          **March 7, 2007**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

200512070081

Certificate of Assumed Name

of

**ANYTHING CORP.**

Pursuant to Section 130 of the General Business Law

1.    The name of the Corporation is **ANYTHING CORP.**

2.    The Corporation was formed under the Business Corporation Law of New York

3.    The assumed name of the above-named corporation shall be:

**A NEW YORK THING**

4.    The principal place of business in New York State is to be located at:

**135 HENRY STREET,  #2
NEW YORK,  NY 10002**

5.    The County in which the Corporation shall be authorized to conduct business under the assumed name is the county of **NEW YORK**

6.    Each address where the Corporation shall be authorized to conduct business under the assumed name is as follows:

**135 HENRY STREET, #2
NEW YORK, NY 10002
COUNTY OF NEW YORK**

7.    An officer of the corporation is **KIERNEN COSTELLO, PRESIDENT**

IN WITNESS WHEREOF, the undersigned being the **PRESIDENT** of the corporation hereby executes this certificate of assumed name

DATED

KIERNEN COSTELLO, PRESIDENT

— 1 —

2005120708|

Certificate of Assumed Name

of

ANYTHING CORP

# BLU-39

RECEIVED
2005 DEC -7 PH 12: 00

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED   DEC 07 2005
TAX $   31678
BY

040421000496

FILED BY:

BLUMBERG*EXCELSIOR* CORPORATE SERVICES
32 SOUTH PEARL STREET- 2ND FLR
ALBANY, NY  12207

—2—

Exhibit F

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 77085503**
**Filing Date: 01/18/2007**

*NOTE: Data fields with the * are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| TEAS Plus | YES |
| **MARK INFORMATION** | |
| *MARK | aNYthing |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | aNYthing |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Anything Corp |
| *STREET | 135 Henry Street, Suite 2 |
| *CITY | New York |
| *STATE (Required for U S applicants) | New York |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | 10002 |
| PHONE | 212-842-1092 |
| FAX | 212-861-0473 |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | No |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | CORPORATION |
| *STATE/COUNTRY OF INCORPORATION | New York |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| *INTERNATIONAL CLASS | 025 |

| | |
|---|---|
| *FIRST USE ANYWHERE DATE | At least as early as 04/21/2004 |
| *FIRST USE IN COMMERCE DATE | At least as early as 04/21/2004 |
| *DESCRIPTION | Hats |
| *FILING BASIS | SECTION 1(a) |
| *FIRST USE ANYWHERE DATE | At least as early as 04/21/2004 |
| *FIRST USE IN COMMERCE DATE | At least as early as 04/21/2004 |
| SPECIMEN FILE NAME(S) | \\TICRS2\EXPORT12\770\855 \77085503\xml1\FTK0003 JP G |
| SPECIMEN DESCRIPTION | T-Shirt |
| *DESCRIPTION | Short-sleeved or long-sleeved t-shirts |
| *FILING BASIS | SECTION 1(a) |
| *FIRST USE ANYWHERE DATE | At least as early as 04/21/2004 |
| *FIRST USE IN COMMERCE DATE | At least as early as 04/21/2004 |
| SPECIMEN FILE NAME(S) | \\TICRS2\EXPORT12\770\855 \77085503\xml1\FTK0003 JP G |
| SPECIMEN DESCRIPTION | T-Shirt |
| *DESCRIPTION | Sweat shirts |
| *FILING BASIS | SECTION 1(a) |
| *FIRST USE ANYWHERE DATE | At least as early as 04/21/2004 |
| *FIRST USE IN COMMERCE DATE | At least as early as 04/21/2004 |
| SPECIMEN FILE NAME(S) | \\TICRS2\EXPORT12\770\855 \77085503\xml1\FTK0003 JP G |
| SPECIMEN DESCRIPTION | T-Shirt |

## ADDITIONAL STATEMENTS INFORMATION

| | |
|---|---|
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |
| SIGNIFICANCE OF MARK | aNYthing appearing in the mark means or signifies "a New York thing" in the relevant trade or industry or as applied to the goods/services listed in the application. |
| DISCLAIMER | No claim is made to the exclusive right to use aNYthing apart from the mark as shown. |

## ATTORNEY INFORMATION

| | |
|---|---|
| NAME | Kristi N  Gamble |
| FIRM NAME | Kaplan & Gamble LLP |
| STREET | 135 Ocean Parkway, 1B |
| CITY | Brooklyn |
| STATE | New York |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 11218 |
| PHONE | 917-519-3793 |
| FAX | 212-861-0473 |
| EMAIL ADDRESS | kgamble@kaplangamble com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| *NAME | Kristi N  Gamble |
| FIRM NAME | Kaplan & Gamble LLP |
| *STREET | 135 Ocean Parkway, 1B |
| * CITY | Brooklyn |
| * STATE (Required for U.S  applicants) | New York |
| * COUNTRY | United States |
| * ZIP/POSTAL CODE (Required for U S. applicants only) | 11218 |
| PHONE | 917-519-3793 |
| FAX | 212-861-0473 |
| * EMAIL ADDRESS | kgamble@kaplangamble com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| | |
|---|---|
| NUMBER OF CLASSES | 1 |
| FEE PER CLASS | 275 |
| TOTAL FEE DUE | 275 |

## SIGNATURE INFORMATION

| | |
|---|---|
| * SIGNATURE | /kng/ |
| * SIGNATORY'S NAME | Kristi N  Gamble |
| SIGNATORY'S POSITION | Attorney of Record |
| * DATE SIGNED | 01/18/2007 |

## FILING INFORMATION SECTION

| SUBMIT DATE | Thu Jan 18 12:41:27 EST 2007 |
| --- | --- |
| TEAS STAMP | USPTO/FTK-24.189.22.60-20 070118124127767741-770855 03-36094c0cebe6e2ecf0d21e 7b519165d6da-CC-1809-2007 0118120304890256 |

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 77085503**
**Filing Date: 01/18/2007**

To the Commissioner for Trademarks:

**MARK: aNYthing (Standard Characters, see mark)**

The literal element of the mark consists of aNYthing. The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicant, Anything Corp., a corporation of New York, having an address of 135 Henry Street, Suite 2, New York, New York, United States, 10002, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.

**For specific filing basis information for each item, you must view the display within the Input Table.**

    International Class 025: Hats; Short-sleeved or long-sleeved t-shirts; Sweat shirts

If the applicant is filing under Section 1(b), intent to use, the applicant declares that it has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(b), as amended.

If the applicant is filing under Section 1(a), actual use in commerce, the applicant declares that it is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended.

If the applicant is filing under Section 44(d), priority based on foreign application, the applicant declares that it has a bona fide intention to use the mark in commerce on or in connection with the identified goods and/or services, and asserts a claim of priority based on a specified foreign application(s). 15 U.S.C. Section 1126(d), as amended.

If the applicant is filing under Section 44(e), foreign registration, the applicant declares that it has a bona fide intention to use the mark in commerce on or in connection with the identified goods and/or services, and submits a copy of the supporting foreign registration(s), and translation thereof, if appropriate. 15 U.S.C. Section 1126(e), as amended.

aNYthing appearing in the mark means or signifies "a New York thing" in the relevant trade or industry or as applied to the goods/services listed in the application.

No claim is made to the exclusive right to use aNYthing apart from the mark as shown.

The applicant hereby appoints Kristi N. Gamble of Kaplan & Gamble LLP, 135 Ocean Parkway, 1B, Brooklyn, New York, United States, 11218 to submit this application on behalf of the applicant.

Correspondence Information:             Kristi N. Gamble
                                    135 Ocean Parkway, 1B

Brooklyn, New York 11218
917-519-3793(phone)
212-861-0473(fax)
kgamble@kaplangamble com (authorized)

A fee payment in the amount of $275 will be submitted with the application, representing payment for 1 class(es).

### Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /kng/   Date: 01/18/2007
Signatory's Name: Kristi N. Gamble
Signatory's Position: Attorney of Record
RAM Sale Number: 1809
RAM Accounting Date: 01/18/2007
Serial Number: 77085503
Internet Transmission Date: Thu Jan 18 12:41:27 EST 2007
TEAS Stamp: USPTO/FTK-24 189.22.60-20070118124127767
741-77085503-36094c0cebe6e2ecf0d21e7b519
165d6da-CC-1809-20070118120304890256

aNYthing



Exhibit G





Sneak Leak S/S '07

Sat 17 Mar '07 at 3:59 am

Fresh For '07, You Suckers!

